# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BVRE, LP and Keystone Real Estate     :
Group, LP,     :
           Appellants     :
       v.     :
    :    No. 1314 C.D. 2018
College Township     :   Argued: April 11, 2019
    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ELLEN CEISLER, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER           FILED: July 23, 2019

BVRE, LP and Keystone Real Estate Group, LP (together, Developer) appeal from the Order of the Court of Common Pleas of Centre County (trial court) that denied Developer's Motion for Summary Judgment (Developer's Motion), granted College Township's (Township) Motion for Summary Judgment (Township's Motion), and dismissed Developer's Complaint against Township. In the Complaint, Developer sought a refund of the fee in lieu of publicly dedicating land (Fee) it paid to Township in association with the approval of its residential development plan, a declaration that Township's use of those funds was not timely and/or in accordance with Section 503(11) of the Pennsylvania Municipalities

Planning Code (MPC)[1] and Section 180-26(E)(9) of Township's Subdivision and Land Development Ordinance (SALDO),[2] and the imposition of statutory interest. On appeal, Developer argues the trial court erred because, as a matter of law, Developer is entitled to a refund of the Fee, plus statutory prejudgment interest, where Township did not use the entire Fee and/or did not use the Fee for the proper purposes within the required three-year period. Developer additionally argues it is entitled to a refund because Township did not comply with the required process for handling the Fee at the time of the Fee's receipt. After review, we affirm.

## I. Background
### A. Complaint/Answer and New Matter

The pertinent, undisputed facts are as follows. This matter arises out of the development of The Villas at Happy Valley (the Villas). As part of the land development approval process, and as authorized by the MPC and the SALDO, Township required Developer to pay the Fee in lieu of it having to publicly dedicate land for parks and recreational facilities. Township deposited the Fee into an account labeled "In Lieu Parkland Account" (Account), which was an interest-

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10503(11). Section 503(11)(vii) of the MPC, *formerly* 53 P.S. § 10503(11)(vii), stated, relevant here, that, at the request of the person or entity that paid a fee in lieu to obtain land development approval, "the municipality shall refund such fee, plus interest accumulated thereon from the date of payment, if the municipality had failed to utilize the fee paid for the purposes set forth in this section within three years from the date such fee was paid." This provision was amended, effective November 24, 2014, and now provides that "[u]pon request of any person who paid any fee under this subsection, the municipality shall refund such fee, plus interest accumulated thereon from the date of payment, if the municipality had used the fee paid for a purpose other than the purposes set forth in this section." 53 P.S. § 10503(11)(vii).

[2] Section 180-26(E)(9) of the SALDO states the Township "shall return the fee, plus interest, upon request of any persons who paid the fee if the Township has failed to utilize the fee for the purpose it was paid." (Reproduced Record (R.R.) at 148a.)

2

bearing account.[3]  Developer paid the Fee on July 20, 2012, although it protested the amount.[4]  The amount of the Fee was ultimately reduced by the trial court on April 19, 2013, to $586,460.  (Compl. ¶¶ 17-18; Answer ¶¶ 17-18.)

On December 19, 2013, Township adopted a resolution (2013 Resolution), which authorized Township to use $52,360 of the Fee, with $45,000 allocated to be used for a "supplemental contribution" toward Oak Hall Regional Park (Oak Hall), and the remaining $7360 for the paving of a walking path at Fogelman Field, a Township park.  (Compl. ¶ 28; Answer ¶ 28;[5] Reproduced Record (R.R.) at 78a-79a.)  Township adopted a second resolution on July 17, 2014 (2014 Resolution), whereby Township "utilize[d] the remaining $537,045" of the Fee as set forth in a document attached to the 2014 Resolution titled "Calculation of Use of Villas Fee in Lieu of Parkland Funds."  (Compl. ¶¶ 31-32; Answer ¶¶ 31-32; R.R. at 81a-82a.)  That attachment listed expenses that Township paid in 2012, 2013, and 2014 for "Township's share of regional park costs" as a member of the Centre Region Council of Governments (CRCOG).  (Compl. ¶¶ 20-21, 33; Answer ¶¶ 20-21, 33; R.R. at 83a-87a.)    Through the 2013 Resolution and 2014 Resolution (together, Resolutions), Township used the Fee to "reimburse . . . Township's . . . share of . . . expenses attributable to" Oak Hall, Whitehall Regional Park (Whitehall), Hess

---

[3] The parties do not dispute that the Fee was paid into the Account and that interest was accrued on the funds.  (*See* Developer's Brief (Br.) at 8-9; Motion ¶¶ 24, 36; Township's Br. at 4.)

[4] Developer disagreed with Township's calculation of the Fee ($1,148,424), and, although it paid the full amount under protest on July 20, 2012, it also filed a land use appeal with the trial court challenging the amount.  (Compl. ¶¶ 13, 15-16; Answer ¶¶ 13, 15-16.)  Developer prevailed in its land use appeal on April 19, 2013, and the trial court reduced the Fee to $586,460.  (Compl. ¶¶ 17-18; Answer ¶¶ 17-18.)  Township refunded $561,964, plus interest and costs, to Developer. Neither party appealed the trial court's decision.

[5] Although paragraph 28 of the Answer "denied" the averment in paragraph 28 of the Complaint, both paragraphs recognize that the amounts designated were used for the parks listed in the paragraph.

3

Softball Field Complex, Fogelman Field, and other CRCOG expenses. (Compl. ¶ 38; Answer ¶ 38.[6]) These parks are located between 1.7 and 6 miles from the Villas. (*Id.*)

Developer asserted in the Complaint that Township's use of the Fee for the regional parks was not proper as such parks are too far away from the Villas and are, therefore, not "accessible" to the Villas as required by Section 503(11)(iii) of the MPC.[7] (Compl. ¶¶ 39-41, 48.) To be accessible, Developer averred that the parks needed to be within or in close proximity to the Villas, and no more than two miles from its center. (*Id.* ¶¶ 40-41 (citing Section 180-26(D)(1) and (9) of the SALDO (addressing the location of land publicly dedicated during land development approval)).) Further, Developer cited an annual report of Township's Parks and Recreation Committee (Annual Report), which suggested that "accessible" meant "less than 2000 feet walking distance with no major physical impediments or barriers such as an arterial road to cross." (*Id.* ¶ 42 (emphasis omitted).) Although there were closer Township parks to the Villas, Developer averred Township used most of the Fee for Oak Hall and Whitehall, which are, respectively, approximately 5 and 6 miles from the Villas, and none of the Fee was used for parks within 2000 feet of the Villas. (*Id.* ¶¶ 45-47.)

---

[6] Paragraph 38 of the Answer did not dispute the use of the Fee as described in the Complaint, but did deny the inference that Township's use was not proper under the MPC and SALDO.

[7] The version of Section 503(11)(iii) of the MPC in effect at the time Developer paid the Fee provided that fees in lieu were "to be used only for the purpose of providing park or recreational facilities accessible to the development." *Former* 53 P.S. § 10503(11)(iii). This provision was amended, effective November 24, 2014, and now provides that fees in lieu "are to be used only for the purpose of providing, acquiring, operating or maintaining park or recreational facilities reasonably accessible to the development." 53 P.S. § 10503(11)(iii).

Developer also averred, citing Section 503(11)(v) of the MPC, that the use of the Fee on the regional parks had no reasonable relationship to the use of those parks by the Villas' residents.[8] (*Id.* ¶ 49.) As the Villas' residents represent less than 5% of Township's population, Developer contended that using the Fee to pay for/reimburse Township for 80% or more of the expenses for some of the parks and CRCOG's general expenses does not bear a reasonable relationship to those residents' possible use of those facilities. (*Id.* ¶¶ 53-58.)

Finally, Developer averred the Township's actions were not in accordance with Section 503(11)(vi) of the MPC or Section 180-26(E)(9) of the SALDO[9] because Township improperly handled those funds, which were to be expended only to construct specific and identified recreational facilities. Based on the expenses attached to the 2014 Resolution, Developer maintained Township's reimbursement to itself for expenses that were not used in **constructing** recreational facilities, let

---

[8] That section provides that "[t]he amount and location of land to be dedicated or the fees to be paid shall bear a reasonable relationship to the use of the park and recreational facilities by future inhabitants of the development or subdivision." 53 P.S. § 10503(11)(v).

[9] At the relevant time, Section 503(11)(vi) provided:

> A fee authorized under this subsection shall, **upon its receipt** by a municipality, be deposited in an interest-bearing account, clearly **identifying the specific recreation facilities** for which the fee was received. Interest earned on such accounts shall become funds of that account. Funds from such accounts **shall be expended only in properly allocable portions of the cost incurred to construct the specific recreation facilities** for which the funds were collected.

*Former* 53 P.S. § 10503(11)(vi) (emphasis added). This provision was amended, effective November 24, 2014, to state: "[a] fee authorized under this subsection shall, upon its receipt by a municipality, be deposited in an interest-bearing account, clearly identified as reserved for providing, acquiring, operating or maintaining park or recreational facilities. Interest earned on such accounts shall become funds of that account." 53 P.S. § 10503(11)(vi). Section 180-26(E)(9) of the SALDO stated, in relevant part, "[t]he fee shall be deposited into a separate interest-bearing account identifying the specific development that contributed the funds." (R.R. at 32a.)

alone any specific facility for which the Fee was paid, did not comport with the requirements of the MPC and SALDO. (Compl. ¶¶ 59-64.)

In its Answer, Township denied its use of the Fee violated the MPC and that the cited SALDO provisions related to the criteria for publicly dedicating land had any relation to the use of a fee in lieu. (Answer ¶¶ 40-41.) It further denied that the Annual Report had any binding legal force on Township and its use of the Fee under the MPC and SALDO. (*Id.* ¶ 42.) Township maintained its use of the Fee was proper because it was used to pay for bills that were incurred after the Fee was paid and were related to providing parks and recreational facilities that are accessible to the Villas. (*Id.* ¶ 48) Township acknowledged that the Fee's use was not identified at the time it was paid, but stated that the use was identified and billed during the three-year period required by the MPC.[10] (*Id.* ¶ 63.)

Discovery ensued, during which Developer took the deposition testimony of Township's Manager, Engineer, Finance Director, and Auditor. These witnesses testified regarding: the land development approval process; how the Fee was handled after it was paid; discussions about how and where to use the Fee; the location of Oak Hall and Whitehall parks in relation to the Villas; the passage of the Resolutions; and the expenditure of the Fee. In addition, Developer obtained documentary evidence, including bank statements for the Account. At that time, Developer learned that, as of December 2016, the Account still had a balance of $339,027.49.

---

[10] In its New Matter, Township averred facts regarding what it did with the Fee following its receipt and various legal defenses. (New Matter ¶¶ 79, 81-89.) Developer responded to the New Matter essentially denying the averments and that the legal defenses had merit. (Reply to New Matter ¶¶ 79, 81-89.)

## B. Cross-Motions for Summary Judgment

On December 18, 2017, Developer filed its Motion, citing the above undisputed facts, as well as some of the deposition testimony of Township's witnesses, the Annual Report, and Township's bank records reflecting that a portion of the Fee remained in the Account after the expiration of the three-year period. Relying on this evidence, Developer argued it was entitled to summary judgment because the undisputed, material facts established, as a matter of law, that: Township did not use the Fee within the required period; if it did use the Fee, it was not for the construction of parks or recreation facilities that were accessible to the Villas or that bore a reasonable relationship to the Villas' residents' use of those parks and facilities; and Township did not properly designate the Fee for use on a specific project. Developer asserted that, in addition to the refund of the Fee, it was entitled to six percent prejudgment interest. Township responded, admitting the material facts were undisputed, but denying that the legal conclusions Developer drew from those facts were correct. Township argued that: Developer was relying on MPC and SALDO provisions that applied to land dedication, not to fees in lieu or the refund thereof; it properly used the Fee via the Resolutions; and its designation, or not, of the Fee for a particular park or recreational facility did not have any legal bearing on whether Developer was entitled to a refund.

Township filed its Motion on December 19, 2017, citing undisputed material facts it believed supported its contentions that it used the Fee within the three-year period via the Resolutions, and its use of the Fee, as set forth in the Resolutions and attachments thereto, was in accordance with the MPC and SALDO because it was used on parks and recreational facilities accessible to the Villas. Therefore, Township asserted Developer had not produced evidence that would support

7

Developer's claims to the contrary. Developer responded, denying that the evidence cited by Township supported its claims and asserting that, as a result, Township was not entitled to summary judgment.

## II. The Trial Court's Opinion

After the parties briefed and argued the Motions,[11] the trial court issued its opinion, which for the following reasons, denied Developer's Motion, granted Township's Motion, and dismissed the Complaint.[12]

### A. Developer's Motion

The trial court rejected Developer's first argument that it was entitled to summary judgment because Township failed to utilize the Fee within three years of

---

[11] In its Motion, Township cited to some of the deposition testimony of its own witnesses, to which Developer objected in its response based on *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932) (precluding a moving party in a summary judgment motion from relying on the oral testimony of its own witnesses in support of the motion). It appears that Developer raised the same issue before the trial court and raises it again, in a footnote in its brief, on appeal. However, the trial court held that the challenged assertions did not involve facts material to the issues before it and that, during oral argument on the Motions, the parties agreed that any dispute in the objected to testimony would not preclude summary judgment. (Trial Ct. Opinion (Op.) at 19 n.3; Developer's Response to Township's Motion ¶ 28 (admitting that a summary judgment motion "can be filed under these circumstances . . . ."), R.R. at 623a.) We agree.

[12] A party is entitled to summary judgment where there is no genuine issue of material fact for a necessary element of the claim, or if, after discovery, the party that will bear the burden of proof at trial has not produced evidence of facts essential to the claim. Pennsylvania Rule of Civil Procedure 1035.2, Pa.R.C.P. No. 1035.2. Therefore, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law," summary judgment may be granted. *Stuski v. Phila. Auth. for Indus. Dev.*, 162 A.3d 1196, 1199 (Pa. Cmwlth. 2017) (citation omitted). The evidence of record is reviewed in the light most favorable to the non-moving party, and "[a] genuine issue of material fact . . . exists if a reasonable jury could find in favor of the non-moving party on that issue." *Perry v. Erie Cty.*, 169 A.3d 1232, 1239 (Pa. Cmwlth. 2017).

payment. Instead, the trial court accepted Township's argument that Township conducts its official business via legally binding resolutions and that the Resolutions identified the use of the Fee on specifically identified parks and recreational facilities within three years of the Fee's receipt. (Trial Ct. Opinion (Op.) at 10-11.) The trial court next rejected Developer's arguments that the Fee was not used, as required by the MPC and SALDO, on parks and recreational facilities accessible to the Villas and the usage of the Fee on the regional parks did not bear a reasonable relationship to the Villas' residents' use of those parks. On the latter contention, the trial court concluded the "reasonable relationship" requirement did not apply to this proceeding but went to the amount of the fee in lieu, which had already been decided. (*Id.* at 12-13.) The trial court then rejected Developer's contention that use of the Fee was not on parks and recreational facilities "accessible" to the Villas' residents. Observing that the term is not defined by the MPC and that neither party presented any authority interpreting the term in the context of the MPC, the trial court construed "accessible" according to its common and approved usage by considering various dictionary definitions. Citing those definitions, and the lack of specific language in the MPC or SALDO to fix a set distance, the trial court concluded that Developer's interpretation was unduly restrictive and a broader interpretation was required to allow for unique characteristics of a municipality or development. (*Id.* at 13-15.) Last, the trial court rejected Developer's arguments that a refund was required because the Fee was not used to construct recreational facilities and Township allegedly failed to comply with the requirements related to separating, earmarking, and spending fees in lieu on a specific park or recreational facility. The trial court held that, under Section 503(11)(iii), the Fee could be used to provide, not just construct, parks and recreational facilities and that the earmarking requirements

9

were not relevant to the question of whether a refund should be granted. (*Id.* at 16-17.) The trial court explained that Developer's interpretation was not supported by the plain language of the MPC and SALDO. (*Id.* at 17.) For these reasons, the trial court concluded that Developer did not establish, as a matter of law, its right to the relief requested in the Complaint. Therefore, it denied Developer's Motion.

### B. Township's Motion

Noting that the parties raised essentially the same arguments on Township's Motion, which asserted that Developer, as the party with the burden of proof, could not come forward with evidence to support its claims, the trial court reiterated its reasons for rejecting Developer's arguments. The trial court also expanded upon its rationale, explaining that under the common and approved usage of "accessible," the parks and recreational facilities upon which Township used the Fee are accessible to the Villas' residents because they were open to the public, free of charge, and could be reached fairly easily by vehicle. Developer did not present evidence establishing otherwise. (*Id.* at 18-19.) While it recognized that there might be some situation where a six-mile distance, when combined with other facts, may render a park or recreational facility inaccessible, the distance alone was insufficient. (*Id.* at 19-20.) Therefore, the trial court granted Township's Motion and dismissed the Complaint.[13]

---

[13] After Developer filed its appeal, the trial court directed Developer to file a Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b). Developer did so, and the trial court issued an order indicating that its previously entered opinion addressed the issues raised by Developer.

10

### III. Developer's Appeal

On appeal,[14] Developer argues the trial court erred in denying its Motion and granting Township's Motion. As it asserted before the trial court, Developer argues that: (1) Township did not utilize the Fee within three years; (2) if Township's Resolutions did utilize the Fee, the uses to which the Fee were put are not for the purposes set forth in the MPC and SALDO; and (3) the manner in which Township handled the Fee violated the MPC and SALDO. For these reasons, Developer argues it is entitled to a refund under the MPC and SALDO, as well as six percent prejudgment interest.

### A. *Utilization of the Fee Within Three Years of Receipt*

Developer first argues that it is entitled to a refund of the Fee pursuant to the versions of Section 503(11)(vii) of the MPC and Section 180-26(E)(9) of the SALDO in effect at the time it paid the Fee because Township did not use the Fee within three years of its payment. Pointing to Township's bank records, which show that $339,027.49 of the funds remained in the Account after the three-year period had expired, Developer asserts Township cannot be said to have utilized those funds. Developer contends the trial court's reliance on the Resolutions was erroneous because, while the Resolutions may reflect the opinion or will of Township Council, resolutions may be rescinded. *Seitel Data, Ltd. v. Ctr. Twp.*, 92 A.3d 851, 859-63 (Pa. Cmwlth. 2014). Township responds that the Resolutions, passed within the three-year period, identified the amounts of the Fee to be used to provide parks and recreational facilities accessible to the Villas, were valid, timely expenditures of

---

[14] "Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion." *Stuski*, 162 A.3d at 1199 n.2.

those funds. Township points out that Developer does not challenge the validity of the Resolutions and disregards the fact that resolutions are official actions of a municipal government. *Wiley v. Woods*, 141 A.2d 844, 847 n.6 (Pa. 1958).

Section 503(11)(vii) provided, in pertinent part, that "[u]pon request . . . , the municipality shall refund such fee, plus interest . . ., **if the municipality had failed to utilize the fee** . . . for the purposes set forth in this section **within three years from the date such fee was paid**." *Former* 53 P.S. §10503(11)(vii) (emphasis added). Section 180-26(E)(9) of the SALDO contains a similar provision, stating "Township shall return the fee, plus interest, upon request . . . if the **Township has failed to utilize the fee** for the purposes set forth above **within a period of three years of the date the fee was paid**." (R.R. at 32a-33a (emphasis added).) Neither the MPC nor SALDO define "utilize," but the term may be defined as "to make useful; . . . make use of . . . ." Webster's Third New International Dictionary 2525 (2002).

In concluding that Township utilized the Fee within the required three-year period based on the Resolutions, the trial court observed that "a municipality conducts official business by resolution." (Trial Ct. Op. at 11.) Through the Resolutions, the trial court reasoned, Township had committed the Fee "for payment of the specifically identified park and recreation facility expenses incurred within the three year window, together with the actual payment of those expenses in that window," which "is sufficient to meet the requirement that the [F]ee . . . be 'utilized' within three years of receipt." (*Id.* at 11.) This analysis is consistent with our Supreme Court's description of "resolution," as being "[a] formal expression of the opinion or will of an official body or a public assembly, adopted by vote; as a legislative resolution." *Wiley*, 141 A.2d at 847 n.6 (internal quotation marks and

12

citation omitted). While a resolution may be rescinded, *Seitel Data, Ltd.*, 92 A.3d at 859-63, this does not require the Court to disregard Township's formal action to utilize, i.e., make use of, the Fee for costs that **had been incurred** between the payment of the Fee and the adoption of the Resolutions, a period of less than three years. (R.R. at 78a-79a, 81a-87a.) The fact that Township has not transferred monies from one of its accounts to another of its accounts does not mean the challenged monies were not utilized by the Resolutions within three years of the Fee's payment. Accordingly, we discern no error in the trial court rejecting Developer's argument.

### B. MPC/SALDO Purposes for the Fee

#### 1. "Accessibility"

Developer next argues the trial court erred in holding that the uses to which the Township put the Fee were not in accordance with the MPC and SALDO. Developer asserts the trial court erred in broadly construing the term "accessible" to include the parks and recreational facilities on which Township used the Fee despite their not being within close proximity or walking distance to the Villas, as required by Section 180-26(D)(1) of the SALDO and Annual Report. Developer argues that when determining whether a park or facility is "accessible," there should be no distinction between the location of land dedicated by a developer and the location of the park facilities upon which fee in lieu funds are used. Developer asserts that under either circumstance the land or facilities must be within close proximity to, and no more than two miles from, the Villas to qualify as "accessible." Developer argues its more restrictive interpretation of "accessible" is supported by the recent amendments to Section 503(11)(iii), requiring that the facilities be "**reasonably**

13

accessible to the development." (Developer's Br. at 23 (citing legislative history related to the 2014 amendment of Section 503(11)(iii), Appendix D of Developer's Brief (Br.)) (emphasis added).) Such amendments, Developer argues, may be considered because they can be construed as a response to an ambiguous statute. *Buehl v. Horn*, 728 A.2d 973, 980 (Pa. Cmwlth. 1999).

Township responds that the parks and recreational facilities upon which the Fee was used are "accessible" to the Villas' residents. Because the term "accessible" is undefined, Township asserts the trial court properly applied the rules of statutory construction to find the term's "plain, ordinary, usually understood meaning, which, generally, is drawn from dictionaries." (Township's Br. at 13 (quoting *Alessi v. Millcreek Twp. Zoning Hearing Bd.*, 814 A.2d 278, 283 n.8 (Pa. Cmwlth. 2002)).) Township asserts Developer's reliance on the SALDO to support its arguments is misplaced because the provisions cited do not apply where a fee in lieu is paid, only where land is dedicated. Finally, Township argues the intent of the General Assembly in 2014 when it amended Section 503(11)(iii) is irrelevant because it does not reflect the intent of the General Assembly that had enacted the version of that section at issue here.

At the time relevant to this matter, Section 503(11)(iii) of the MPC provided that "[t]he land or fees, or combination thereof, are to be used only for the purpose of providing park or recreational facilities **accessible to the development**." *Former* 53 P.S. § 10503(11)(iii) (emphasis added). Section 180-26(D)(1) of the SALDO, relied upon by Developer, authorizes Township's Council to determine "if the land [to be offered for public dedication by a developer] is acceptable . . . based on . . . relevant criteria, including" that the proposed "[a]reas shall generally be designed as neighborhood parks or natural areas which provide recreational opportunities for the

14

residents within the subdivision or in close proximity." (R.R. at 29a.)  An exception to this requirement is available if a dedication would be made to a regional park that "is located within two miles of the center of the subdivision." (*Id.*)

In its opinion, the trial court reviewed the statutory language and, consistent with Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(a),[15] considered dictionary definitions to find and apply the common and approved usage of the undefined term "accessible."  Citing definitions of accessible, including "capable of being reached," "being within reach," "capable of being used or seen," and "capable of being reached or easily approached," the trial court rejected Developer's assertion that "accessible" meant within close proximity to, and no farther than two miles from, the center of the Villas, finding such interpretation "unduly restrictive" and without support in the MPC and SALDO.  (Trial Ct. Op. at 13-14.)  In addition, the SALDO provisions addressing the location of parkland relied upon by Developer expressly apply to **dedication of land** by a developer and do not indicate that those restrictions similarly apply to payment of fees in lieu.  As observed by the trial court, while the SALDO required that land being publicly dedicated by a developer be within a certain distance of the associated development, "neither the MPC nor the SALDO contains language evidencing an intent to narrow the permissible uses of fee in lieu funds to use for parks or recreational facilities within a predetermined, specified distance of a development." (*Id.* at 14.)  Having reviewed the MPC, SALDO, and definitions of "accessible," we agree with the trial court that accepting Developer's more restrictive interpretation is not supported by the statutory language and "would severely limit the discretion of a local municipality to plan for parks and recreational facilities in connection with land

---

[15] This provision states, in pertinent part, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage . . . ." 1 Pa. C.S. § 1903(a).

15

development." (*Id.*) Accordingly, we discern no error in the trial court's determination on this issue.

Moreover, Developer's reliance on the 2014 amendment to Section 503(11)(iii) is misplaced. A court "cannot discern the legislative intent of the General Assembly that passed the relevant, prior version of . . . [a] statute by examining the intent of the General Assembly that amended that statute." *Commonwealth v. Lynn*, 114 A.3d 796, 827 (Pa. 2015). "[W]hile the former version of a statute is relevant to discern the legislative intent of a later version when the statutory language is ambiguous, the inverse is not true." *Id.* Thus, the General Assembly's intent when it enacted the 2014 amendment does not inform our analysis on a prior General Assembly's intent when it enacted the version of Section 503(11)(iii) applicable to this matter. Further, *Buehl*, upon which Developer relies, is distinguishable because, in that case, the General Assembly amended a statutory provision **in response to judicial decisions** finding the provision ambiguous and interpreting it in a particular way. Here, as the trial court noted, there was no authority interpreting the term "accessible" to which the General Assembly was responding. (Trial Ct. Op. at 13.)

Even if we considered that amendment, our Supreme Court has also recognized that not all amendments are changes in the law; some are "clarifications of [a] prior law" that reflect no change in the law. *See O'Connor v. City of Phila. Bd. of Ethics*, 105 A.3d 1217, 1233-34 (Pa. 2014). The addition of the word "reasonably" before "accessible" in the 2014 amendment did not necessarily, as Developer argues, alter the meaning of this requirement. Section 1922 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922, requires courts, in ascertaining the General Assembly's intent, to assume that the legislature "does not

16

intend a result that is . . . unreasonable." Thus, applying this principle, courts would construe the term "accessible" as impliedly including a reasonableness requirement. That is what the trial court did here when it found that the parks and recreational facilities upon which the Fee was used were accessible. (Trial Ct. Op. at 18-20.) The trial court examined who would be residing at the Villas, what types of transportation were available (private cars and public transportation) to those residents, and the ability of those residents to access the relevant parks and recreational facilities.

## 2. "Reasonable Relationship"

Developer next argues the trial court erred in not applying the reasonable relationship language of Section 503(11)(v) to the purpose provision of Section 503(11)(iii). Because the Villas' population comprises less than 5% of Township's residents and the Fee was used to pay Township's entire 18.11% share of the regional park expenses, Developer maintains the required reasonable relationship does not exist. Township replies the reasonable relationship requirement applies only to Section 503(11)(v) of the MPC, which was at issue in Developer's 2012 land use appeal challenging the amount of the Fee. Township contends that provision is irrelevant to the purpose for which a fee in lieu was used – which is the only concern in a refund action under Section 503(11)(iii). Township further asserts that Developer's argument is without merit as it attempts to engraft a requirement into the refund analysis that was not included by the General Assembly.

Section 503(11)(v) states that "[t]he amount and location of land to be dedicated or the fees to be paid shall bear a reasonable relationship to the use of the park and recreational facilities by future inhabitants of the development or

subdivision." 53 P.S. § 10503(11)(v). The trial court held this subsection was relevant to the issue of **calculating** the amount of a fee in lieu, which had been at issue in Developer's original challenge to the amount of the initial Fee in 2012, rather than the permitted purpose language set forth in Section 503(11)(iii). The trial court explained that "[t]he legislature could have included the reasonable relationship requirement within this express statement of permitted purpose[s, set forth in Section 503(11)(iii),] had it intended to impose this further restriction on [the] use of fee in lieu payments," but did not, which "indicates a legislative intent that the uses not be so restricted." (Trial Ct. Op. at 12.) We agree with the trial court's interpretation.

By its terms, Section 503(11)(v) requires that the amount of a fee in lieu a developer pays or the amount and location of the land that a developer publicly dedicates be reasonably related to a particular development's inhabitants' future use of any park or recreational facilities related thereto. This restriction protects developers from unreasonable demands in the amount and location of land to be publicly dedicated or the amount of the fee in lieu to be paid. It is, in essence, a quantitative restriction. In contrast, Section 503(11)(iii), which addresses the purpose of the fee in lieu and dedicated land, requires only that the fee or land be used "for the purpose of providing park or recreational facilities accessible to the development." *Former* 53 P.S. § 10503(11)(iii). Absent from this section is the "reasonable relationship" language, which would limit the use of the fee or land beyond that it be used on facilities that are accessible to the development. Courts are not to add language to a statute which the legislature did not include. *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 199 (Pa. Cmwlth. 2015). Accordingly, there was no error in the trial court's conclusion that the "reasonable relationship" language of subsection (v) has no impact on subsection (iii).

18

*C. Handling the Fee in Compliance with MPC/SALDO*

Developer argues it is entitled to a refund because Township did not follow Section 503(11)(vi) of the MPC and Section 180-26(E)(9) of the SALDO. Developer asserts that Township violated these provisions because it did not, when the Fee was paid, "identify any specific recreation facilities for which the fee in lieu would be used." (Developer's Br. at 28.) Moreover, Developer maintains that these funds had to be used "'to construct' the specific facilities" and Township's use of those funds to pay for regional park expenses, which included non-construction charges, does not meet this requirement. (*Id.* (quoting *former* 53 P.S. § 10503(11)(vi)).) Developer asserts the trial court erred in overlooking the "to construct" language and broadly interpreting the word "providing" in Section 503(11)(iii) to include activities beyond constructing parks.

Township responds that the trial court did not err in holding that these provisions are unrelated to the purpose-based test for whether a fee in lieu must be refunded. It maintains these are accounting and earmarking provisions that allow a developer to track the funds as they are used. Here, Township argues, Developer knew exactly where the Fee was used, as it pled the specifics of that use in the Complaint. Township further contends the relief for a violation of these provisions is a mandamus action seeking compliance, not waiting, as Developer did here, for the three-year period to expire and then seeking a refund. Last, Township explains it could not identify specific recreational facilities at the time Developer paid the Fee because Developer did so under protest and requested that the Fee be held in escrow pending resolution of Developer's challenge to the Fee.

Section 503(11)(vi) addressed how and where a fee in lieu is to be deposited upon receipt and provided:

**A fee authorized under this subsection shall, upon its receipt by a municipality, be deposited in an interest-bearing account, clearly identifying the specific recreation facilities for which the fee was received**. Interest earned on such account shall become funds of that account. Funds from such account **shall be expended only in properly allocable portions of the cost incurred to construct the specific recreation facilities** for which the funds were collected.

*Former* 53 P.S. § 10503(11)(vi) (emphasis added). At the time Developer paid the Fee, Section 180-26(E)(9) of the SALDO stated, in relevant part "[t]he fee shall be deposited into a separate interest-bearing account identifying the specific development that contributed the funds." (R.R. at 32a.) Under these provisions, when Township received the Fee, Township should have placed those funds in an interest-bearing account that identified a specific recreational facility or facilities (MPC) and the specific development, the Villas, (SALDO) for which the Fee was received. Township did not do this, (Answer ¶ 63), which is not consistent with the MPC's and SALDO's requirements.

However, after examining the MPC's and SALDO's refund provisions, we agree with Township and the trial court that the relief for Township's non-compliance with these accounting or earmarking requirements is not a refund of the Fee, as claimed by Developer. Section 503(11)(vii) provided that a refund must be granted if a fee is not used "for the **purposes** set forth in this section," and Section 503(11)(iii) stated that fees in lieu "are to be used only for the **purpose of providing park or recreational facilities accessible to the development**," *former* 53 P.S. § 10503(11)(iii), (vii) (emphasis added). Thus, a refund is available when a municipality fails to use, within three years of receipt, a fee to provide parks or recreational facilities accessible to the development that paid the fee. To hold, as Developer requests, that Township's failure to properly label the interest-bearing account in which the Fee was deposited results in the refund of the entire Fee,

20

notwithstanding the use of the Fee for purposes consistent with the MPC and SALDO, is not supported by the statutory language. As the trial court cogently explained, under Developer's "theory, an error in account labeling or documentation could result in forfeiture of a fee in lieu, regardless of whether the fee was actually used solely for the purposes expressly permitted by the MPC and the SALDO," and this "harsh result" was not intended by the statutory language. (Trial Ct. Op. at 17.)

We also agree with the trial court's conclusion that the use of the Fee was not limited only to the construction of recreational facilities, as Developer argues. (Trial Ct. Op. at 16.) In construing statutory language, it is presumed that the legislature "does not intend a result that is absurd, impossible of execution or unreasonable." Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1). "Thus, '[s]tatutes should receive a sensible construction . . . .'" *Summit Sch., Inc.*, 108 A.3d at 197 (quoting *Capital Academy Charter Sch. v. Harrisburg Sch. Dist.*, 934 A.2d 189, 193 (Pa. Cmwlth. 2007)). Where a statute is ambiguous, i.e., there are at least two reasonable interpretations of the statute's text, the legislature's intent may be ascertained by "[t]he consequences of a particular interpretation." *Id.* (internal quotation marks and citations omitted).

While subsection (vi) indicates that the funds deposited in the relevant accounts shall be expended on the "cost incurred to construct" recreational facilities, subsection (iii) authorizes the use of fees in lieu for "providing" park and recreational facilities accessible to the development. *Former* 53 P.S. § 10503(11)(iii), (vi). Subsection (iii) does not expressly limit the use of a fee in lieu to constructing park and recreational facilities accessible to the development, but instead limits a fee's use to providing those facilities. "Provide," undefined by the MPC, can be defined as "to supply what is needed for . . . support" or "to supply for use." Webster's Third

21

New International Dictionary 1827. Although a municipality could provide park and recreational facilities by constructing new facilities, park and recreational facilities also could be provided through the use of existing park and recreational facilities that are accessible to the development. These two interpretations are reasonable and, therefore, create an ambiguity in the statutory language. Thus, we may consider, among other things, the consequences of a particular interpretation to ascertain the legislature's intent. *Summit Sch., Inc.*, 108 A.3d at 197.

Upon review, we conclude the consequences of Developer's more restrictive interpretation creates an unreasonable result. There may be situations where a municipality has an existing park accessible to the proposed development, perhaps even adjacent thereto, through which park and recreational facilities could be provided. Or, there may be no land remaining upon which to construct a new park or recreational facility, requiring that the existing accessible park and recreational facilities be used to provide such facilities to the development. Using Developer's more restrictive interpretation would preclude the use of a fee in lieu on these existing accessible parks, notwithstanding that those existing parks and facilities are providing or supplying the requisite recreational support to the development. Interpreting these provisions, as Developer suggests, to require the use of a fee in lieu to construct new facilities to provide recreational opportunities, while precluding the use of that fee to provide those opportunities via existing accessible parks or recreational facilities, is an unreasonable result: under either scenario, accessible parks and/or recreational facilities are provided, as they are "suppl[ied] for use" or "supply what is needed for . . . support," of the new development's recreational needs. Webster's Third New International Dictionary 1827.

Unreasonable results are to be avoided, as the legislature is presumed not to intend such results. *Summit Sch., Inc.*, 108 A.3d at 197; 1 Pa. C.S. § 1922(1).

Additionally, we observe that while the Township's non-compliance with these provisions is troubling, we are also troubled with Developer waiting more than three years to challenge that non-compliance. Such challenges must be raised at the earliest opportunity, preferably before a municipality utilizes a fee in lieu, or risk being waived or barred by laches.[16] Asserting this type of challenge in a mandamus action, as suggested by Township, or as a part of an initial challenge to a proposed fee under Section 503(11)(v),[17] would avoid the situation where, as here, a municipality utilizes a fee without knowing that a developer objected to how the municipality has handled the fee for accounting purposes until after the fee has been expended or given the opportunity to become compliant. Accordingly, we discern no error in the trial court's rejection of Developer's arguments under these circumstances.

### *D. Prejudgment Interest*

Finally, Developer asserts that, if the Court agrees that summary judgment was improperly granted to Township and a refund should have been granted, it is entitled to an award of prejudgment interest at six percent from the date it paid the Fee until the Township refunds the entire $586,460 plus the interest that had accrued.

---

[16] The doctrine of laches "bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *Nigro v. City of Philadelphia*, 174 A.3d 693, 699 (Pa. Cmwlth. 2017) (internal quotation marks and citation omitted).

[17] Although it is questionable whether we will be faced with a matter similar to the present one following the amendments to various provisions of Section 503(11), including subsection (iii) (the purpose provision), (vi) (the earmarking provisions), and (vii) (the refund provision).

23

However, because we discern no error in the trial court's decision, Developer's argument necessarily fails.

## IV.    Conclusion

For the foregoing reasons, the trial court did not err in denying Developer's Motion, granting Township's Motion, and dismissing Developer's Complaint. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BVRE, LP and Keystone Real Estate   :
Group, LP,   :
                     Appellants   :
           v.   :
  :   No. 1314 C.D. 2018
College Township   :
  :

# **O R D E R**

**NOW**, July 23, 2019, the Order of the Court of Common Pleas of Centre County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge
